UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ISAIAH SMITH,

Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC. TRANS UNION, LLC, AND ALDOUS AND ASSOCIATES, PLLC.

Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Isaiah Smith ("Plaintiff"), brings this action on an individual basis for damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.,* seeking statutory and other damages against defendants named herein, and alleges based upon the personal knowledge of Plaintiff and upon information and belief, as follows:

## NATURE OF THE ACTION

1. Plaintiff suffered harm as a result of false and inaccurate information published by defendant Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC, ("TransUnion"), and Equifax Information Services, LLC ("Equifax"), consumer

reporting agencies ("CRAs") (collectively, " CRA Defendants") as defined under 15 U.S.C. § 1681a(f).

2. Through the dissemination of consumer background reports, as that term is defined by 15 U.S.C. § 1681a(d), CRA Defendant has and continues to report inaccurate information about Plaintiff's consumer background to numerous credit companies and persons, both known and unknown – including the reporting of false, inaccurate and misleading information in Plaintiff's credit file through information furnished by defendants Aldous and Associates, PLLC ("Aldous", "Furnisher Defendant")

3. Despite receiving dispute letters from Plaintiff concerning inaccurate information reported on Plaintiff's accounts, and despite Plaintiff's requests that Aldous cease contact, CRA Defendants willfully, intentionally, recklessly, and/or negligently continued to report inaccurate information on Plaintiff's consumer background reports, and Aldous continued to harass Plaintiff through repeated unauthorized communications.

4. Egregiously, Experian failed to delete the inaccurate information even though Plaintiff disputed the materially misleading inaccuracies in writing via Experian's established mechanisms and procedures to dispute consumer credit information. After receiving Plaintiff's dispute, Experian sent a response to Plaintiff but failed to modify the inaccurate account balance and past-due balance. The manipulation of information artificially lowered Plaintiff's credit scores more than if the account were reported accurately, since to potential lenders the account appeared more recently delinquent than it truly was.

5. Plaintiff notified Experian in writing that his personal information had been compromised in a data breach, and Experian added an identity-theft security alert to Plaintiff's credit file.

6. Despite that alert, Experian subsequently reported a collection account containing false information furnished by Credence Resource Management (non-defendant), which (a) identified T-Mobile as the original creditor and (b) stated that the account was opened in February 2026.

7. Plaintiff's only telephone line for the past four years has been serviced by Verizon Wireless. A T-Mobile account had previously appeared on Plaintiff's credit report and was disputed and removed because the open date listed on that account was January 2019; a date on which Plaintiff was too young to have lawfully entered into a credit agreement.

8. Notwithstanding that the T-Mobile account had been previously disputed and deleted from Plaintiff’s credit file, Experian reinserted the same debt without providing Plaintiff written notice of the reinsertion within five business days, as required by 15 U.S.C. § 1681i(a)(5)(B)(ii). Experian further re-aged the reinserted account by reporting an open date of February 2026, creating the false impression that the debt had only recently gone into collections, when in fact the underlying account dated to January 2019. This manipulation restarted the account’s apparent age and reporting period, artificially depressing Plaintiff's credit scores and misleading prospective creditors as to the recency of the delinquency.

9. Upon receiving Plaintiff's disputes, Experian was required under 15 U.S.C. § 1681i(a)(1)(A) to conduct a reasonable reinvestigation and to delete or modify information

found inaccurate, incomplete, or unverifiable. Experian's own tradeline states that the account was “previously in dispute - investigation complete, reported by data furnisher.” Notwithstanding the identity-theft security alert on Plaintiff's file, and notwithstanding Plaintiff’s explanation in his dispute that he was below the age of legal capacity to obtain a line of credit on the account’s original open date, Experian verified and continued to report the account with a February 2026 open date. Experian’s reinvestigation consisted of accepting the furnisher's response rather than independently evaluating the disputed information as the statute requires.

10. Defendant Equifax re-aged Plaintiff's accounts, moving the Date of Major Delinquency First Reported forward on two separate tradelines. On one account, Equifax moved that date, and after Plaintiff disputed the re-aging, Equifax moved it again, to a date falling after its own reinvestigation. These dates reflect static dates that should never change, and by re-aging the accounts in a misleading fashion, Equifax adversely affected credit decisions by prospective lenders, since to potential lenders the accounts appeared more recently delinquent than they truly were. Equifax further reported an outstanding balance and past-due amount on an account that another consumer reporting agency reports as settled with a zero balance.

11. On June 1, 2023, Federal Student Aid denied Plaintiff's Grad PLUS loan application based expressly on a credit check with Equifax, citing an “Account in Collection” and a “Charge Off,” the same derogatory items Plaintiff has disputed as inaccurate. That denial left Plaintiff unable to fund his enrollment at the graduate program to which he had been admitted with a scholarship and forced Plaintiff to decline his seat.

12. Defendant TransUnion deleted an account from Plaintiff's credit file following Plaintiff's dispute and thereafter reinserted the same debt under a different creditor name without providing Plaintiff written notice within five business days as required by 15 U.S.C. § 1681i(a)(5). Trans Union further failed to note on Plaintiff's consumer reports that the accounts were disputed by the consumer.

13. Within the years preceding the filing of this Complaint, Defendant Aldous & Associates, PLLC, a debt collector, placed prerecorded voicemails and text messages to Plaintiff's cellular telephone without Plaintiff's prior express written consent, in violation of 47 U.S.C. § 227. Aldous placed these contacts using rotating telephone numbers and an automated short code, a practice that prevents consumers from blocking a collector's communications.

14. On July 15, 2024, Aldous sent Plaintiff an email acknowledging that the credit bureaus had notified Aldous that Plaintiff was claiming the account reported by its office was fraudulent. Aldous continued to contact Plaintiff by prerecorded voicemail and text message after that acknowledgment and continues to do so as of the filing of this Complaint.

15. Plaintiff presently retains no fewer than sixty prerecorded voicemails and no fewer than thirty text messages from Aldous on his current cellular telephone, which he has held for approximately six months. Aldous contacted Plaintiff at the same frequency over Plaintiff's other cellphone number ending in 6700. Upon information and belief, Aldous placed no fewer than 165 prerecorded calls and 60 text messages to Plaintiff during the four years preceding this Complaint. The precise number is reflected in Aldous's dialing records.

16. Following Plaintiff's disputes, the consumer reporting agencies deleted Aldous's tradeline from Plaintiff's credit file, and Aldous has not since reported the account. Aldous nonetheless continued to place prerecorded voicemails and text messages to Plaintiff demanding payment and continues to do so as of the filing of this Complaint.

**THE PARTIES**

17. Plaintiff Isaiah Smith is a resident of New York, NY, and qualifies as a "consumer" as that term is defined under 15 U.S.C. § 1681a(c). Plaintiff is an individual (and not an entity).

18. Defendant Equifax is a consumer reporting agency that maintains its principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax may be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092. Defendant Equifax qualifies as a "consumer reporting agency" under 15 U.S.C. § 1681a(f) and regularly conducts business in this district.

19. Defendant Experian Information Solutions, Inc. is a consumer reporting agency that regularly conducts business in this judicial district. Defendant Experian has a principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626, is registered to do business in the State of New York, and may be served with process upon CT Corporation, its registered agent for service of process at 28 Liberty Street, New York, NY 10005. Defendant Experian qualifies as a "consumer reporting agency" under 15 U.S.C. § 1681a(f).

20. Defendant Trans Union, LLC is a consumer reporting agency that maintains its principal place of business at 555 West Adams Street, Chicago, Illinois 60661.

Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703. Defendant Trans Union qualifies as a "consumer reporting agency" under 15 U.S.C. § 1681a(f).

21. Defendant Aldous and Associates, PLLC is a foreign professional service limited liability company, registered to do business in the State of New York. Aldous is a debt collector engaged in the business of collecting debts. Aldous can be served with process at its principal business address: 4625 S 2300 East, Suite 207, Holladay, UT 84117, or at its registered address: P.O. Box 171374, Holladay, UT 84117-1374. Defendant Aldous qualifies as a "debt collector" under 15 U.S.C. § 1692a(6) and as a "furnisher" under 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

22. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which states that "[a]n action to enforce any liability created under this title may be brought in any appropriate United States district court, without regard to the amount in controversy"

23. Venue lies within this judicial district pursuant to 28 U.S.C. § 1391(a) because the plaintiff resides in New York, NY, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## SUBSTANTIVE ALLEGATIONS

### ***The FRCA***

24. As described above, Congress enacted § 1681 *et seq.* of Title 15 of the United States Code, which § 1681(a) states as follows:

> The banking system is dependent upon fair ***and accurate*** credit reporting. ***Inaccurate credit reports directly impair the efficiency of the banking system***, and unfair credit reporting methods

undermine the public confidence, which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the creditworthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a ***need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness***, impartiality, and a respect for the consumer's right to privacy.

(Emphasis added).

25. The FCRA mandates CRAs to adhere to the following twin duties: (i) to assure maximum possible accuracy of information when preparing consumer reports and to set up reasonable procedures to maintain compliance with this minimum reporting standard; and (ii) to reinvestigate the facts and circumstances surrounding a dispute by a consumer and to appropriately and timely correct any inaccuracies, including by quickly notifying the furnisher and any other parties in the distribution chain of the disputed inaccuracies.

26. CRAs compile, maintain, and report information concerning Plaintiff's creditworthiness, credit-standing, credit capacity, character, and general reputation. That information is then made available for use by third parties in credit transactions involving consumers, for employment purposes, the underwriting of insurance for consumers, and even housing. Plaintiff has a legally protected interest in CRA Defendant fulfilling its respective duties under the FCRA, so that the information reported and maintained by Defendants is done fairly, to support maximum levels of confidentiality, accuracy and relevancy.

27. Furnishers receive notice of a consumer's dispute from CRAs alerting furnishers of inaccurate information in the consumer's account. Furnishers are then required

to conduct a reasonable investigation regarding the disputed information. When and if appropriate, furnishers are obligated to remove any inaccurate information following the performance of the reasonable investigation. At a minimum, furnishers and CRAs are required to mark the status of the tradelines/accounts as disputed on the consumer's background reports.

**EQUIFAX**

28. On or about December 16, 2019, Plaintiff opened a credit card account with First Financial Bank (account ending in 1325, with an original credit limit of $250).

29. Plaintiff stopped making payments on this account in or about July 2021, and the account was charged off by the original creditor on or about September 01, 2021.

30. Under the Fair Credit Reporting Act, 15 U.S.C. § 1681c(a)(4), this charged-off account must be removed from Plaintiff's credit reports on or about September 2028 (seven years from the date of first delinquency)

31. In or about December 2025, Plaintiff disputed Equifax's reporting of the Date of Major Delinquency 1st Reported for this account after noticing the date had changed from what Equifax had previously reported

32. Equifax's report dated February 10, 2025 reported the Date of Major Delinquency 1st Reported for this account as March 1, 2022.

33. Equifax issued reinvestigation results stating: "We have researched the credit account. Account # - *1325 The results are: - THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION *DATE OF MAJOR DELINQUENCY 1ST REPORTED *HISTORICAL ACCOUNT INFORMATION.

34. The tradeline attached to Equifax's March 18, 2026 reinvestigation results displayed no value in the Date of Major Delinquency 1st Reported field.

35. Equifax's reports dated June 30, 2026 and July 19, 2026 reported the Date of Major Delinquency 1st Reported for this account as March 31, 2026 — more than four years after Equifax's February 10, 2025 report, and thirteen days after Equifax's own reinvestigation results letter.

36. Equifax's payment history reflects a 120-day delinquency in January 2022, a 150-day delinquency in February 2022, and charge-off status continuously from March 2022 forward, contradicting Equifax's reported Date of Major Delinquency 1st Reported of March 31, 2026 on its face.

37. In or about September 2025, Plaintiff paid a settlement to 1FBUSA in resolution of this account.

38. Notwithstanding Plaintiff's settlement, Equifax's reports dated June 30, 2026 and July 19, 2026 reflect an account balance of $505 and a past-due amount of $505 as to this account.

39. Defendant Trans Union reports the same account with a zero balance and a status of "SETTLED-LESS THAN FULL BLNC; PAID IN FULL/WAS A CHARGE OFF," updated as of March 2026.

40. On February 10, 2025, Equifax reported the Synovus/First Digital account (no. *4227) as sold to another company as of January 2023.

41. On July 19, 2026, Equifax reported the account's Date of Major Delinquency 1st Reported as June 6, 2025 — more than two years after the account was sold.

**TRANSUNION**

42. An account cannot have a new delinquency first reported over two years after it was sold to another company. Equifax made this same error on Plaintiff's 1FBUSA account.

43. Defendant Trans Union reported the Aldous & Associates account as of April 27, 2024, in connection with a debt originally owed to Blink Fitness.

44. On May 9, 2024, Plaintiff disputed the Aldous & Associates account with Trans Union.

45. By May 17, 2024, Trans Union removed the Aldous & Associates account from Plaintiff's credit file.

46. In January 2025, the same debt reappeared on Plaintiff's Trans Union report, listed under the name Blink Fitness rather than Aldous & Associates.

47. Trans Union did not provide Plaintiff written notice of this reinsertion within five business days, as required by 15 U.S.C. § 1681i(a)(5).

48. Trans Union has reported a debt originally owed to T-Mobile on Plaintiff's credit file on three separate occasions, each time under a different collection agency: Receivables Performance, beginning August 19, 2022; AmSher Collection Services, beginning February 19, 2023; and Source Receivables Management, beginning August 19, 2024. Each listing carried an identical balance of $4,766.

49. Plaintiff disputed this debt with Trans Union on each of the three occasions it appeared. Each time, Trans Union removed the account, and each time, the same debt was subsequently added back to Plaintiff's file under a different collection agency's name.

50. Trans Union denied each of Plaintiff's three disputes of this debt, notwithstanding that the underlying account predates Plaintiff's eighteenth birthday.

51. Each time this T-Mobile debt reappeared under a new collection agency, Trans Union reported it with a new "date opened," rather than the account's true, original date, notwithstanding that all three listings carried the identical amount of $4,766 and the identical original creditor, T-Mobile. This is re-aging: the same debt, listed as though it were newly opened in 2022, again in 2023, and again in 2024.

52. Each time this debt was added to Plaintiff's Trans Union report, Plaintiff's credit score dropped significantly, on at least one occasion by as much as 63 points, notwithstanding that the debt was not new and Plaintiff had disputed and had it removed on each prior occasion.

53. Trans Union was required under 15 U.S.C. § 1681i(a)(1)(A) to conduct a reasonable reinvestigation each time Plaintiff disputed this debt. On at least one occasion, Trans Union resolved Plaintiff's dispute within days.

54. A reasonable investigation would have revealed that the same debt had already been disputed and removed under a different collection agency's name. Trans Union's own file contained the record of each prior dispute and removal at the time it investigated the next one.

55. Trans Union verified this debt as accurate three separate times, under three different furnishers, notwithstanding that its own records showed the same debt being disputed, removed, and reappearing under a new name each time

56. Trans Union denied each of Plaintiff's three disputes of this debt. Plaintiff was under the age of eighteen on the date this account was originally opened and lacked legal capacity to enter into a credit agreement.

**EXPERIAN**

57. On or about December 16, 2019, Plaintiff opened a credit card account with First Financial Bank USA, account number ending in 1325, with a credit limit of $250.

58. Plaintiff stopped making payments on this account in or about July 2021. The account was charged off, with a Date of First Delinquency of September 9, 2021.

59. In or about September 2025, Plaintiff paid a settlement to First Financial Bank USA in resolution of this account.

60. Defendant Experian's tradeline for this account reflects a balance of $505 and a past-due amount of $505, updated as of July 31, 2026.

61. Defendant Trans Union reports the same account with a zero balance and a status of "Settled - Less Than Full Balance; Paid in Full/Was a Charge Off."

62. Defendant Experian reports a collection account furnished by Credence Resource Management, LLC ("Credence"). The original creditor listed is T-Mobile. The "Date Opened" listed is February 18, 2026.

63. Experian's tradeline states that this account will remain on Plaintiff's credit file "On Record Until Jul 2032."

64. This account had previously appeared on Plaintiff's Experian credit file. Plaintiff disputed the account, and it was deleted.

65. The account subsequently reappeared on Plaintiff's Experian report, furnished by Credence. Plaintiff did not receive written notice of the reinsertion within five business days, as required by 15 U.S.C. § 1681i(a)(5).

66. Experian's tradeline reflects two separate reinvestigations of this account. Each is recorded as: "Account previously in dispute - investigation complete, reported by data furnisher."

67. Following both reinvestigations, Experian continued to report the account with the same open date of February 18, 2026, and the same removal date of July 2032

68. Plaintiff did not open this account and does not owe this debt.

69. Plaintiff has held cellular service with Verizon Wireless continuously for at least four years. Plaintiff has not applied for cellular service with T-Mobile during this period.

***The TCPA***

**ALDOUS AND ASSOCIATES**

70. Aldous attempted to collect from Plaintiff an alleged Blink Fitness debt of $150.49.

71. By Aldous's own account, the alleged debt arose from an account purportedly opened January 13, 2019, past due as of February 1, 2022, and placed with Aldous for collection on June 8, 2022.

72. Blink Fitness filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware on August 12, 2024, case no. 24-11686.

73. Blink Fitness's assets were subsequently sold through the bankruptcy proceeding.

74. Aldous has never provided Plaintiff with documentation establishing its authority to collect this debt on behalf of the entity that currently owns the receivable following the bankruptcy sale.

75. Within the four years preceding this Complaint, and continuing to the present, Aldous placed prerecorded voicemail messages to Plaintiff's cellular telephone without Plaintiff's prior express written consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

76. Many of these voicemails consisted of an identical, approximately 21-second prerecorded message referencing "Pat Hill" and "Aldous and Associates," establishing the use of a prerecorded or artificial voice.

77. Aldous placed these calls using a rotating series of telephone numbers, including but not limited to: (615) 622-6988, (414) 255-8991, (407) 603-9258, (424) 380-5134, (917) 352-4417, (917) 590-6152, (716) 349-4754, and (347) 802-2464.

78. Upon information and belief, Aldous's rotation among numerous telephone numbers is designed to circumvent call-blocking and caller-ID technology and to disguise the volume and source of its calls.

79. Aldous also sent text messages to Plaintiff's cellular telephone via automated short code 247292 and from telephone number (424) 467-1006, without Plaintiff's prior express written consent.

80. Plaintiff presently retains no fewer than sixty prerecorded voicemails and no fewer than twenty text messages from Aldous on his current cellular telephone, which he has held for approximately six months.

81. Aldous contacted Plaintiff at a comparable or greater frequency over the preceding two and one-half years, at Plaintiff's prior telephone number.

82. Upon information and belief, Aldous placed several hundred prerecorded calls and text messages to Plaintiff within the four years preceding this Complaint. The precise number is within Aldous's exclusive possession and will be established through its dialing records in discovery.

83. On July 15, 2024, Aldous sent Plaintiff an email acknowledging that the credit bureaus had notified Aldous that Plaintiff was claiming the account was fraudulent.

84. The only substantiation Aldous offered in that email was a set of dates and a balance. Aldous did not provide a signed agreement, an itemization of the debt, or proof of its authority to collect.

85. Notwithstanding this acknowledgment, Aldous continued placing prerecorded voicemails and text messages demanding payment on the disputed debt.

86. On multiple occasions, Plaintiff answered calls from Aldous and verbally requested that Aldous cease contacting him. Aldous continued its calls and texts after each request.

87. Plaintiff disputed the Aldous account with the consumer reporting agencies. The agency to which Aldous furnished this account deleted its tradeline on or about July 10, 2024.

88. Aldous has furnished no information regarding this account to any consumer reporting agency since that deletion.

89. Notwithstanding the deletion, Aldous has continued, and continues as of the filing of this Complaint, to contact Plaintiff by prerecorded voicemail and text demanding payment.

90. Aldous's continued contact after acknowledging Plaintiff's fraud dispute, after Plaintiff's repeated verbal requests to cease, and after deletion of its tradeline, was willful and knowing.

## COUNT I

**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**
**(Against Defendant Aldous & Associates, PLLC)**

91. Plaintiff repeats and realleges paragraphs 1 through 89 as though fully set forth herein.

92. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(A)(iii), prohibits calling persons on their cellular phone using an artificial or prerecorded voice without their prior express written consent.

93. Aldous used prerecorded voice messages when placing calls to Plaintiff's cellular phone, bringing its calls within the ambit of the TCPA.

94. Aldous violated the TCPA by placing repeated calls to Plaintiff's cellular phone using a prerecorded voice without Plaintiff's prior express written consent. Any consent Aldous may have had to place such calls was explicitly revoked by Plaintiff's verbal demands, made directly to Aldous, that the calls cease.

95. The calls placed by Aldous to Plaintiff concerned collection activity and were not placed for emergency purposes as defined under 47 U.S.C. § 227(b)(1)(A)(i).

96. Aldous knowingly and willfully violated the TCPA. Aldous acknowledged in writing that Plaintiff disputed the debt as fraudulent. On multiple occasions, Plaintiff also told Aldous directly, during telephone calls, that he wanted Aldous to stop calling him. Aldous told Plaintiff it would do so. Aldous did not stop, and continued placing prerecorded calls to Plaintiff after each such assurance.

97. Under 47 U.S.C. § 227(b)(3)(B), Aldous is liable to Plaintiff for no less than $500.00 per violation. Aldous's knowing and willful violations entitle Plaintiff to treble damages pursuant to 47 U.S.C. § 227(b)(3)(C).

## COUNT II

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692e (Against Defendant Aldous & Associates, PLLC)

98. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

99. 15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

100. Among other things, 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt, and 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

101. Aldous continued to represent to Plaintiff, through repeated prerecorded calls, that Plaintiff owed a valid, collectible debt and demanded payment on that debt, notwithstanding that all three consumer reporting agencies had deleted Aldous's tradeline

from Plaintiff's credit file, that Aldous had acknowledged Plaintiff's fraud dispute in writing, and that Aldous never provided verification of the debt or documentation of its authority to collect.

102. As a result of Aldous's violations, Plaintiff is entitled to statutory damages under 15 U.S.C. § 1692k, together with actual damages and costs.

## COUNT III

**VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(b)
FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY
(Against Defendants Equifax Information Services LLC, Trans Union, LLC, and Experian Information Solutions, Inc.)**

103. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

104. 15 U.S.C. § 1681e(b) requires that a consumer reporting agency follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

105. Equifax violated § 1681e(b) by reporting an inaccurate Date of Major Delinquency 1st Reported on Plaintiff's 1FBUSA account and on Plaintiff's Synovus/First Digital account, and by reporting a balance and past-due amount on the 1FBUSA account notwithstanding Plaintiff's settlement of that account.

106. Trans Union violated § 1681e(b) by repeatedly verifying a T-Mobile debt as accurate under three different furnishers, each reflecting a new "date opened," notwithstanding that Trans Union's own file showed the same debt, at the same balance, being disputed and removed on each prior occasion.

107. Experian violated § 1681e(b) by reporting a balance and past-due amount on the 1FBUSA account notwithstanding Plaintiff's settlement of that account, and by reporting the Credence/T-Mobile account with an open date of February 18, 2026 and a scheduled removal date of July 2032, on a debt Plaintiff did not open.

108. Each Defendant's conduct was willful, entitling Plaintiff to statutory and punitive damages under 15 U.S.C. § 1681n, or, in the alternative, negligent, entitling Plaintiff to damages under 15 U.S.C. § 1681o.

## COUNT IV

**VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681i**
**FAILURE TO CONDUCT A REASONABLE REINVESTIGATION**
**(Against Defendants Equifax Information Services LLC, Trans Union, LLC, and Experian Information Solutions, Inc.)**

109. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

110. 15 U.S.C. § 1681i requires that a consumer reporting agency conduct a reasonable reinvestigation upon receiving a consumer's dispute, and correct or delete any information found to be inaccurate. Under § 1681i(a)(5), if a previously deleted item is reinserted, the agency must provide the consumer written notice within five business days.

111. Equifax violated § 1681i by failing to conduct a reasonable reinvestigation of Plaintiff's dispute. Equifax's own reinvestigation results letter acknowledged modifying the Date of Major Delinquency 1st Reported field, and the value Equifax subsequently reported was less accurate than before the reinvestigation.

112. Trans Union violated § 1681i(a)(5) by reinserting the Aldous/Blink Fitness debt onto Plaintiff's credit file without providing written notice within five

business days. Trans Union further violated § 1681i by verifying the T-Mobile debt as accurate on three separate occasions without conducting an investigation reasonably calculated to detect the pattern reflected in its own file.

113. Experian violated § 1681i(a)(5) by reinserting the Credence/T-Mobile account without providing Plaintiff written notice within five business days. Experian further violated § 1681i by conducting two reinvestigations of that account, each of which consisted of accepting Credence's response rather than independently evaluating the disputed information.

114. Each Defendant's conduct was willful, entitling Plaintiff to statutory and punitive damages under 15 U.S.C. § 1681n, or, in the alternative, negligent, entitling Plaintiff to damages under 15 U.S.C. § 1681o.

115. As a direct and proximate result of Defendants' conduct described above, Plaintiff has suffered a decrease in his credit score, including multiple documented decreases of as much as 63 points following the reappearance of previously disputed and removed debt on his credit file.

116. As a direct and proximate result of Equifax's inaccurate reporting, Plaintiff was denied a federal school loan, based expressly on the derogatory items Plaintiff has disputed as inaccurate herein.

117. As a direct and proximate result of Aldous's conduct, Plaintiff has suffered emotional distress, including anxiety and frustration, from receiving repeated, unwanted prerecorded calls over a period of years, notwithstanding his repeated requests that the calls stop.

118. Plaintiff has expended substantial time and effort disputing the inaccurate information described herein with Defendants, including submitting multiple written disputes to each consumer reporting agency named herein over a period of approximately two years.

119. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to his credit reputation and diminished access to credit on favorable terms.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment:

A. awarding Plaintiff statutory money damages, actual damages and punitive damages, including pre-judgment and post-judgment interest.

B. awarding Attorney’s fees and costs, should Plaintiff retain counsel, and other relief; and

C. awarding such other relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: New York, New York
September 4, 2026

By: */s/ Isaiah Smith*
Plaintiff, Pro Se
100 West 131 Street
(646) 954 -4918
New York, NY 10027
Isaiahsmith641@gmail.com